IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CRAIG TOLLEY,

    Plaintiff,

       v.

UNITED PARCEL SERVICE,

    Defendant.

CIVIL ACTION FILE
NO. 1:05-CV-606-TWT

## OPINION AND ORDER

This is an employment discrimination action brought pursuant to 42 U.S.C. §
1981.  It is before the Court on the Defendant's Motion for Summary Judgment [Doc.
19].  For the reasons set forth below, the Defendant's motion is granted.

## I.  BACKGROUND

Plaintiff Craig Tolley, an African-American, was employed by Defendant
United Parcel Service ("UPS") as a sorter and delivery driver, working out of the
Dunwoody Center in Atlanta, Georgia.  From January 2004 through March 24, 2004,
Tolley was assigned to drive a delivery route that included a business called Flo-Pak.
On March 17, 2004, UPS received a complaint on its customer concern hotline from
Misty Campbell, an employee of Flo-Pak.  Campbell alleged that she was being

sexually harassed by a UPS driver and requested that UPS contact her for further

information.  Specifically, the call log description of her complaint was as follows:

> Incident Date/Time: 03/17/04 16:37 - DRIVER IS HARRASING [sic]
> HER.  ON 1 OCCASION SAW HER @ WENDY'S TOLD HER TO
> ROLL HER WINDOW DOWN.  DRIVER MADE VULGER [sic]
> GESTURES, HE KEEPS SHOWING UP @ HER WORK. GOING BY
> NAME OF JEFF, OR JAMES.  PLEASE CONTACT MISTY @ . . .
> FOR FURTHER INFO   RM

(Pl.'s Mem. in Opp'n to Def.'s Mot. for Summ. J., Ex. A.)  Campbell's complaint was

forwarded to Joseph Muesse, the Dunwoody Center Business Manager, who began

investigating the allegations.

On the morning of March 18, 2004, Muesse called Flo-Pak and spoke with

Campbell's supervisor.  The supervisor informed Muesse that Campbell had been

harassed, on an ongoing basis, by the African-American driver that regularly delivered

to Flo-Pak.  (Muesse Suppl. Decl. ¶ 4.)  After learning this information, Muesse

consulted with Steve Marshall, the On-Car Supervisor, to determine who delivered to

Flo-Pak and fit the description of the alleged harasser.[1]  (Muesse Suppl. Decl. ¶ 4.)

After determining that Tolley regularly delivered to Flo-Pak, Muesse met with Tolley

to inform him of the allegations and investigation.  Tolley denied the accusations and

---

[1]In her initial complaint to UPS, Campbell indicated that the driver's name was
Jeff or James.  Muesse and Marshall determined that none of the Dunwoody Center
drivers went by either of those names.  (Muesse Suppl. Decl. ¶ 4.)

noted that he was not the only driver that drove that route.  In response, Muesse stated that Tolley was the only African-American driver that delivered to Flo-Pak.  (Pl.'s Dep. at 128-29; Pl.'s Decl. ¶ 5.)

UPS continued its investigation of Campbell's allegations by sending Jessica Anderson, an employee in the UPS Security Department, and Paula Simmons, the Employee Relations Manager, to interview Campbell and other Flo-Pak employees. During the investigation, Campbell confirmed the statement made by her supervisor to Muesse that she was being harassed by the African-American UPS driver that regularly delivered to Flo-Pak.  (Anderson Decl. ¶ 9.)  In a written statement, Campbell described numerous instances of inappropriate and vulgar comments and behavior by the UPS driver, both at Flo-Pak and away from the office.  (Anderson Decl., Ex. A.)  According to Campbell, a number of these incidents were witnessed by two co-workers, Miranda Pettiford and Larry Sanders.  Pettiford and Sanders were subsequently interviewed by UPS and corroborated many of Campbell's allegations. (Anderson Decl. ¶¶ 5-9, Exs. D & E.)  Sanders was even able to identify Tolley by name.  (Anderson Decl., Ex. E; Pl.'s Dep., Ex. 22.)

After receiving the results of the investigation, Muesse met with Division Manager Mike Garland and District Labor Manager Bill Zbieszkowski.  They decided that Tolley should be fired for sexual harassment, which is sufficient cause for

immediate termination under the Collective Bargaining Agreement between UPS and the International Brotherhood of Teamsters ("Teamsters"). (Muesse Decl. ¶¶ 9-10; Zbieszkowski Decl. ¶ 12.) Accordingly, UPS discharged Tolley, effective March 24, 2004. (Pl.'s Dep., Ex. 24.) The following day, Tolley filed a grievance with the Teamsters, challenging the termination decision. (Pl.'s Dep., Ex. 25; Zbieszkowski Decl. ¶ 13.)

Pursuant to the Collective Bargaining Agreement, the parties are first to attempt to resolve grievances at the local level. If a resolution cannot be reached, the grievance is submitted to a regional grievance committee and heard by a panel of four to six representatives who have the authority to make final and binding rulings. (Zbieszkowski Decl. ¶¶ 10-11.) On April 21, 2004, a four-person panel comprised of equal numbers of UPS and Teamsters representatives held a hearing on Tolley's grievance. District Labor Manager Zbieszkowski appeared on behalf of UPS. Tolley and his Teamsters representatives were also present at the hearing. During the hearing, each side was given the opportunity to present evidence and argument. (Pl.'s Dep., Ex. 26.) In support of its termination decision, UPS presented the statements of Campbell, Pettiford, and Sanders. (Pl.'s Dep., Ex. 26 at 2-7, 10-11.) In response, Tolley denied any wrongdoing and challenged the credibility of the witnesses and the reliability of the investigation. (Pl.'s Dep., Ex. 26 at 7-9, 11-15; Zbieszkowski Decl.

¶ 14.)  After considering the evidence, the panel denied Tolley's grievance and upheld the termination.  (Pl.'s Dep., Ex. 26 at 23; Zbieszkowski Decl. ¶ 14.)  Approximately one year after the panel denied his grievance, Tolley filed this action.  He alleges that he was terminated because of his race, in violation of 42 U.S.C. § 1981.[2]  UPS moves for summary judgment.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  DISCUSSION

---

[2]Tolley also asserted two state law claims: intentional infliction of emotional distress and invasion of privacy.  Those claims were previously dismissed with prejudice.  (Order, June 2, 2005.)

Tolley alleges that UPS terminated his employment because of his race, in violation of 42 U.S.C. § 1981. To prevail on a claim of race discrimination under section 1981, a plaintiff must prove that the defendant acted with discriminatory intent. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005); Powers v. Alabama Dep't of Educ., 854 F.2d 1285, 1288 n.4 (11th Cir. 1988). Discriminatory intent may be established by direct or statistical evidence, or a plaintiff may use circumstantial evidence to satisfy the four-part test outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).[3] Tolley does not argue that he has any direct or statistical evidence of discriminatory intent. Rather, he relies solely on circumstantial evidence and, thus, must satisfy the McDonnell Douglas framework. Under this framework, a plaintiff is first required to create an inference of discriminatory intent by establishing a *prima facie* case of racial discrimination. Vessels, 408 F.3d at 767 (citing McDonnell Douglas Corp., 411 U.S. at 802). In order to establish a *prima facie* case, a plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by a person outside the protected class,

---

[3]The circumstantial evidence test was established in the context of a Title VII claim. However, Title VII and section 1981 "have the same requirements of proof and use the same analytical framework." Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

or he was treated less favorably than a similarly situated person outside the protected class.  Maynard v. Board of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003); Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

Once a *prima facie* case is established, the defendant is afforded an opportunity to negate the inference of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  McDonnell Douglas Corp., 411 U.S. at 802-04; Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004).  The defendant's "exceedingly light" burden is "one of production, not proof."  Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994); Perryman v. Johnson Prods. Co., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983).  If the defendant meets the burden of production, the presumption of discrimination is eliminated and the burden shifts back to the plaintiff to show that the reason proffered by the defendant was pretextual and not the actual motivation for the discharge.  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Vessels, 408 F.3d at 768.  Although the burden of production alternates between the plaintiff and the defendant, the ultimate burden of proving discriminatory intent remains at all times with the plaintiff.  Wilson, 376 F.3d at 1088 (quoting Burdine, 450 U.S. at 253, 256).

UPS argues that Tolley has failed to establish a *prima facie* case because he has not presented any admissible evidence of a similarly situated, nonminority employee

who was treated more favorably.[4]  A plaintiff must identify a comparator that is similarly situated in "all relevant respects."  Holifield, 115 F.3d at 1562.  The most important factors to consider are the nature of the offenses and the nature of the punishment imposed.  Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).  "[T]he comparator's misconduct must be nearly identical to the plaintiff's in order to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  Id. (internal quotations and citation omitted).  Tolley all but concedes that he cannot identify any such employee who was similarly situated and treated more favorably.  (See Pl.'s Mem. in Opp'n, at 14.)  Furthermore, when questioned during his deposition as to whether he was aware of any other UPS driver who had been accused of sexual harassment by a customer but not discharged, Tolley offered only one vague example, based entirely on hearsay.  According to Tolley, another driver told him that a white male driver allegedly made inappropriate comments to a female but no action was ever taken after it was reported.  (Pl.'s Dep. at 225.)  Tolley conceded, however, that he had no personal knowledge of the alleged incident or what might have occurred as a result.  (Pl.'s Dep. at 226-27.)  Nor did Tolley know if the other driver had the same supervisor.  See Jones v. Gerwens, 874

---

[4]Tolley has not presented any evidence, nor does he argue, that he was replaced by someone outside the protected class.

F.2d 1534, 1541 (11th Cir. 1989) ("Courts have held that disciplinary measures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."). The burden is on Tolley to provide facts necessary to determine whether an alleged comparator is similarly situated, and he has not done so. See Roy v. Broward Sheriff's Office, No. 04-16727, 2005 WL 3528951, at *2 (11th Cir. Dec. 22, 2005); Cannon v. Dyncorp, 378 F. Supp. 2d 1332, 1343 (M.D. Ala. 2004). As such, Tolley has failed to identify a similarly situated employee. Consequently, he has failed to make out a *prima facie* case under the McDonnell Douglas framework. See, e.g., Maynard, 342 F.3d at 1290 (plaintiff failed to establish *prima facie* case of discrimination absent evidence of similarly situated employee); Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1318-19 (11th Cir. 2003) (same); Harris v. Fulton-DeKalb Hosp. Auth., 255 F. Supp. 2d 1347, 1368 (N.D. Ga. 2002) (same).

Nevertheless, Tolley contends that his failure to identify a comparator is not the end of his race discrimination claim. Tolley correctly notes that the Eleventh Circuit Court of Appeals has stated that "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate *where no other evidence of discrimination is present*." Wilson, 376 F.3d at 1092 (quoting Holifield, 115 F.3d at 1562). Tolley asserts only one argument in support of his claim that he was terminated because of race. Specifically, Tolley points to the comment made by

Muesse during their initial meeting that Tolley was the only African-American that drove that route and, therefore, he had to be the one against whom Campbell was making her allegations. According to Tolley, Muesse raised the issue of race before he was aware that Campbell was complaining about an African-American. He claims that this fact alone raises an inference of race discrimination.

The only basis for Tolley's assertion that Muesse was not aware that the allegations were being made about an African-American is the fact that the call log of Campbell's complaint did not mention anything about race (Pl.'s Dep. at 129-30) and that Muesse did not speak to Campbell until after meeting with Tolley. However, it is undisputed that prior to his meeting with Tolley, Muesse spoke with Campbell's supervisor and was informed that the alleged harasser was the African-American that regularly delivered to Flo-Pak. (Muesse Suppl. Decl. ¶ 4; Muesse Decl. ¶ 6.) Muesse relayed this information to Tolley's immediate supervisor, Steve Marshall. (Muesse Suppl. Decl. ¶ 4.) In fact, Tolley testified to having a conversation with Marshall on March 18, 2004, while walking to Muesse's office. (Pl.'s Dep. at 211-13.) During that conversation, Tolley asked what was going on and was told that a harassment complaint had been made about a "black guy with a low haircut and a moustache." (Pl.'s Dep. at 212-13.) Thus, the evidence clearly establishes that, regardless of whether the call log entry contained any reference to race, Muesse was aware, prior

to meeting with Tolley, that the complained of individual was African-American.  As such, rather than raising an inference of race discrimination, Muesse's comment appears simply to be referencing the fact that Tolley fit the description of the alleged harasser.  (<u>See</u> Muesse Suppl. Decl. ¶ 5.)  Tolley has failed to present evidence sufficient to raise an inference of race discrimination and, thus, has failed to establish a *prima facie* case.

Even assuming that Tolley established a *prima facie* case, his claim of discriminatory discharge would fail because he has not shown that the reason offered by UPS for his termination was pretext.  Tolley concedes that sexual harassment constitutes a legitimate, nondiscriminatory reason for termination.  The burden therefore shifts back to Tolley to demonstrate why the articulated reason was pretext for race discrimination.  In order to demonstrate pretext, a plaintiff must show either "that a discriminatory reason more likely motivated the employer . . . or that the employer's proffered explanation is unworthy of credence." <u>Burdine</u>, 450 U.S. at 256. A plaintiff must do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Vessels</u>, 408 F.3d at 771 (<u>quoting</u> <u>Cooper v. Southern Co.</u>, 390 F.3d 695, 725 (11th Cir. 2004)).  The failure to present significantly probative and concrete

evidence of pretext justifies summary judgment for the defendant.  <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990); <u>Young v. General Foods Corp.</u>, 840 F.2d 825, 829 (11th Cir. 1988).

Tolley maintains that he did not sexually harass Campbell and claims that the investigation into her complaint was so fraught with inconsistencies that UPS could not have reasonably believed that he was the individual sexually harassing Campbell. Regardless of whether Tolley actually sexually harassed Campbell, an "employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." <u>Nix v. WLCY Radio/Rahall Commc'ns</u>, 738 F.2d 1181, 1187 (11th Cir. 1984); <u>see also</u> <u>Damon v. Fleming Supermarkets of Fla., Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999) ("We have repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law.  We are not in the business of adjudging whether employment decisions are prudent or fair.").  "Pretext means more than a mistake on the part of the employer; pretext means a lie, specifically a phony reason for some action." <u>Silvera</u>, 244 F.3d at 1261 (<u>quoting Wolf v. Buss (America) Inc.</u>, 77 F.3d 914, 919 (7th Cir. 1996)).  Thus, the inquiry is limited to whether the employer offered an honest, nondiscriminatory explanation for terminating the employee, regardless of whether the decision might have been

mistaken.  Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991);

see also Hendricks v. Baptist Health Servs., 278 F. Supp. 2d 1276, 1288 (M.D. Ala.

2003) ("An employer's good faith, but incorrect, belief that an employee violated a

work rule can constitute a non-discriminatory reason for that employee's suspension

or termination.").

Tolley presents several arguments in an effort to show that UPS's articulated

reason for his termination was pretextual.  First, he reiterates his allegations regarding

Muesse's reference to his race.  Muesse's comment does not establish pretext for the

same reason it fails to create an inference of race discrimination.  Tolley next argues

that based on his delivery records for March 17, 2004, UPS could not have believed

that Tolley sexually harassed Campbell.  Campbell contacted UPS about the alleged

harassment at 16:37 on March 17, 2004.  According to Tolley's delivery records, he

was delivering packages to various locations between 16:09 and 17:47 on that day.

(Zbieszkowski Decl., Ex. C.)  Tolley maintains that this information clearly indicates

that he could not have harassed Campbell at Wendy's on the date and time of her call

to UPS.  Tolley, however, misinterprets the call log entry.  The call log of Campbell's

complaint does not state that her call was being made contemporaneously with, or

even immediately after, the harassment at Wendy's.  Rather, the complaint description

merely states that "[o]n 1 occasion" the driver had harassed her at Wendy's.  (Pl.'s

Mem. in Opp'n, Ex. A.)  Thus, the delivery records do not establish an inconsistency that would have caused UPS to question Tolley's involvement in Campbell's sexual harassment claim.

Tolley asserts that Campbell never identified the alleged harasser by name but simply referred to him as "the UPS driver."[5]  According to Tolley, UPS therefore could not have formed a reasonable belief that he was responsible for the harassment.  However, identification by name was not necessary to establish a good faith belief that Campbell's allegations were concerning Tolley.  For example, Campbell specified that the individual harassing her was the UPS driver that routinely delivered to Flo-Pak and had delivered packages on March 18, 2004.  (Campbell Dep. at 87.)  It is undisputed that from January 2004 through March 24, 2004, Tolley drove a delivery route that included Flo-Pak and delivered packages to Flo-Pak every day, including March 18, 2004.  (Pl.'s Dep. at 95-96, 101-02, 105; Muesse Decl. ¶ 9; Zbieszkowski Decl., Exs. C & D; Zbieszkowski Suppl. Decl. ¶ 11 & Ex. J.)  In addition, Larry Sanders, a Flo-Pak employee who witnessed an encounter between Tolley and Campbell, specifically identified the UPS driver as "Craig" in his written statement.

---

[5]During her deposition in this case, Campbell positively and unequivocally identified Tolley as the UPS driver that regularly delivered to Flo-Pak and that sexually harassed her.  (Campbell Dep. at 88-89.)

(Anderson Decl., Ex. E.)  This information was sufficient for UPS to develop a good faith belief that Tolley was the driver harassing Campbell.

Tolley next points to a statement signed by Sanders, which stated that Sanders had never seen Tolley have a personal conversation with any females at Flo-Pak.  This statement, however, was prepared by Tolley.  (Pl.'s Dep. at 152-53; Pl.'s Dep., Ex. 20.)  Tolley alleges that this statement conflicts with a later statement given by Sanders to UPS investigators and, thus, evidences another inconsistency in the investigation.  In his second statement, Sanders stated that he witnessed an encounter between Tolley and Campbell in which Tolley rubbed Campbell's shoulders.  He did not view the conduct as harassment but noted that Campbell stated that the contact made her uncomfortable.  (Pl.'s Dep., Exs. 21 & 22.)  Sanders's second statement corroborated Campbell's allegations.  (See Anderson Decl., Ex. A.)  Any minimal variation in Sanders's two statements would not be enough to cast doubt on the investigation as a whole.  The Court is not persuaded that this is evidence of pretext.

UPS conducted a thorough investigation into Campbell's complaint of sexual harassment, and her allegations were corroborated by two co-workers.  The decision was made to terminate Tolley only after several members of UPS management reviewed the results of the investigation.  (Muesse Decl. ¶ 10.)  Tolley has failed to demonstrate that UPS did not have a good faith belief that he was responsible for the

sexual harassment of Campbell, nor has he shown that the proffered reason for terminating him should not be believed.  Because Tolley has failed to establish either a *prima facie* case of race discrimination or pretext, summary judgment for UPS is warranted.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 19] is GRANTED.

SO ORDERED, this 22 day of February, 2006.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge